## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### HARTFORD  DIVISION

| | |
|---|---|
| IN RE: | CASE NO.  25-21127 (JJT) |
| **KATHLEEN A. RABON**<br>**DEBTOR.** | CHAPTER 7 |
| **ELAINE MALCHMAN**<br>**RICHARD RUSS**<br>**RICHARD ROTHSTEIN, TRUSTEE**<br>**MOVANTS** | |
| **VS.** | |
| **KATHLEEN A. RABON, DEBTOR**<br>**ANTHONY S. NOVAK, TRUSTEE**<br>**RESPONDENTS** | |

## POST TRIAL BRIEF OF THE DEBTOR SEEKING EQUITABLE RELIEF

The Debtor, Kathleen, and her Husband Mark Rabon ("the Rabons") respectfully submit this Post Trial Brief following the evidentiary hearings. The record establishes that the Court should exercise its equitable authority to:

(1) recognize and enforce the parties' escrow arrangement concerning the Assignment of Note, Mortgage, and Foreclosure Judgment;

(2) supply any missing contractual terms necessary to effectuate the parties' intent; and

(3) permit the Debtors to resume payments under the court issued loan terms so they may retain their family home.

### I. INTRODUCTION

This matter arises from an effort to save the Rabons' home from foreclosure. Edwin St. Germain negotiated with Berkshire Bank (herein after "Berkshire") to purchase the Note, Mortgage, and Foreclosure Judgment for $200,000—less than half the outstanding debt—on the condition that the Rabons and St. Germain execute full Releases.

To fund the purchase, St. Germain secured $260,000 in private financing from Dan Malchman. The funding ultimately came from Elaine Malchman and Richard Russ ("the Lenders"). The Lenders wired $125,000 each to Attorney Richard Rothstein ("Rothstein"), who acted as the closing agent and, by agreement, the escrow holder of the Assignments.

Under the terms agreed to by the parties an escrow was intended to be formed by the parties where,

1. Rothstein would hold the Assignment documents in escrow as is evidenced by terms of the Assignment of Judgment issued by the Mortgagee (Exhibit 10) and Rothstein's testimony;

2. If Edwin St. Germain and/or the Rabons repaid the loan in full, the Assignments would be released to St. Germain or the Rabons; and,

3. If the borrowers failed to repay, the Assignments would be released to the Lenders, who could then complete the foreclosure.

Although time constraints prevented a single integrated writing, the essential terms were memorialized in emails, draft agreements, and the parties' conduct. Further, Rothstein, by his actions, acted as an agent for both parties by accepting the funds from the Lenders and the Releases from the Rabons and Edwin St. Germain. Rothstein then disbursed as requested by all the parties by paying the sum of $200,000 and surrendering original Releases to Berkshire Bank and paying the back and future taxes. In addition, Rothstein testified that the Lenders and Rabon Party all agreed that he would hold all the Assignments until the parties agreed how to release or would require a court order before releasing them.

## II. FINDINGS OF FACT SUPPORTED BY THE RECORD

### A. The Rabons' Home Was in Foreclosure

The Rabons' home was subject to a foreclosure judgment. Berkshire agreed to sell the loan for $200,000 conditioned on full Releases.

### B. Edwin St. Germain Negotiated the Purchase to Save the Home

St. Germain's sole purpose was to prevent foreclosure. Berkshire accepted $200,000 on a debt of approximately $425,000 because of the Releases.

**C. Edwin St. Germain arranged the Purchase Funds from Elaine Malchman and Richard Russ (Lenders)**

The Lenders agreed to loan $260,000 at 12% interest for up to 24 months. Their testimony confirmed that the loan's purpose was to allow the Rabons to save their home.

**D. Attorney Rothstein Was Designated as Escrow Agent**

All parties agreed that Attorney Richard Rothstein would hold the original Allonge, Assignment of Mortgage and Judgment in escrow. Attorney Rothstein accepted the documents and has retained possession continuously.

**E. The Escrow Terms Were Communicated in Emails and Conduct**

Although no single written loan agreement was executed by the parties, the essential terms were set forth in emails, communications, and the parties' performance as follows:

a. The Lenders would loan a total of $260,000, interest rate of 12% and payable in 24 months.

b. The Assignments were delivered to Attorney Rothstein by Bershire.

c. The Releases by the Rabons and Edwin St. Germain were delivered to Attorney Rothstein as Trustee.

d. Attorney Rothstein released the Funds and Releases to Berkshire in exchange for the Allonge, Assignment of Mortgage and Assignment of Judgment.

**F. Attorney Rothstein Requires Court Direction**

Rothstein has requested that the Court issue an Order providing the terms of the Escrow intended by the parties setting out the conditions on which he may release the Assignments to either Rabons party or the Lender party.

**G. Edwin St. Germain Attempted to Make Payments**

The initial payment of $2,600 was paid to the Lenders as part of the May 9th transaction. Edwin St Germain, with contributions by Mark Rabon, attempted to make payments in the amount

of $2,600.00 after May 9, 2025 but such payments were rejected by Attorney Frank Liberty as Lender's attorney.

### III. LEGAL STANDARD

**A. Bankruptcy Courts Sitting in Connecticut Are Courts of Equity**

Bankruptcy courts apply state law but are empowered to grant equitable relief. Connecticut foreclosure law is itself equitable in nature. In Connecticut, under common law, State Courts may:

Prevent forfeiture,

Reconstruct agreements,

Supply missing terms,

Enforce escrow arrangements, and

Fashion remedies to achieve fairness.

**B. Connecticut Recognizes Equitable Contracts and Escrow Agreements**

Where essential terms are clear and conduct shows mutual assent, courts enforce the agreement and may supply missing terms.

**C. Equitable Relief Is Appropriate to Prevent Forfeiture**

Connecticut courts disfavor forfeiture of homes and property interests where the parties acted in good faith and substantial performance occurred.

### IV. ARGUMENT

**A.  The Court May Supply Missing Terms to Effectuate the Parties' Intent**

The evidence overwhelmingly shows that all parties intended a loan secured by the Assignments, with repayment determining who received them. The Lenders intended to have the Note, Mortgage and Judgment as collateral to complete the foreclosure should the borrowing party default on the loan terms.

The evidence shows:

a. The Lenders loaned a total of $260,000, of which $200,000 was paid to Berkshire Bank to purchase the Assignments, the remaining portion of the original $250,000 disbursement was used for paying outstanding and future taxes, closing expenses and the remaining balance paid out to Edwin St. Germain. The loan terms of 12% interest for a term of 24 months is not in dispute.

b. The Rabons and Edwin St. Germain delivered original Releases to Rothstein.

c. Berkshire, as the Mortgagee, delivered the Allonge, Assignment of Mortgage and Assignment of Judgment to Rothstein. All the various assignments from Berkshire included Attorney Richard Rothstein as Trustee, clearly showing the parties intent to establish an escrow with Rothstein to hold pending the repayment or failure thereof of the loan.

d. The distribution of both the funds an releases to Bershire, the payment of taxes and closing fees and expenses all by Rothstein to the respective parties completed the conveyance portion of the transaction.

e. All parties agreed that release of the Assignments depended on repayment by the borrowers.

f. All parties relied on this structure.

Almost with foresight, Edwin St. Germain specifically requested that Attorney Frank Liberty not be used by the Lenders for this transaction. Up to the day of the transaction the parties were in agreement on the terms of the transaction, acted in good faith upon those terms and used a mutually acceptable agent to close and disburse in accordance with the agreed terms. Only afterwards the funding of the transaction did Attorney Liberty start to change those terms and then reject payments from the borrowers. Here equity holds that a parties that creates the detrimental condition should not benefit from it.

Even without a single integrated writing, Connecticut law enforces such agreements where the essential terms are established through communications and conduct. See Presidential Capital Corp. v. Reale, 231 Conn. 500 (1994) ("Where parties intended to be bound, courts may supply missing terms necessary to effectuate the agreement." and Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Investors, 260 Conn. 766 (2002) ("Courts may "fill gaps" in incomplete agreements when the parties' intent is evident from conduct.") In this case and using the terms set out by the Lender's attorney as its basis, the Court should complete the loan terms and allow the borrower a chance in completing the payments within the original 24 month loan period.

**B.  The Court Should Establish an Escrow Agreement Consistent with the Court's Equitable Findings and to prevent Unjust Enrichment**

Rothstein holds the Assignments without a written escrow agreement and seeks judicial direction. Without equitable intervention, the Lenders would receive over $200,000 in equity—created only because the Rabons and St. Germain executed Releases—while the borrowers are denied the opportunity to perform. Allowing the Lenders this equity in light of what the Rabons may have relinquished with those Releases without the borrowers being given the chance to repay the debt is the very essence of Unjust Enrichment.

Connecticut foreclosure jurisprudence consistently favors outcomes that avoid unnecessary loss of homes where the borrowers can perform.

**V. REQUESTED RELIEF**

The Debtors respectfully request that the Court:

1. **Recognize and enforce** the loan and escrow arrangement intended on May 9, 2025;

2. **Supply missing terms** necessary to effectuate the parties' intent;

3. **Permit the Debtors to resume payments** under the original loan terms, with:

    a. three missed $2,600 payments cured within a reasonable time;

    b. all accrued interest paid at satisfaction;

    c. reimbursement of any taxes paid by the Lenders at satisfaction;

    d. insurance updated to the Lenders as the first additional insured;

    e. timely payment of all future taxes and insurance premiums;

    f. full repayment of principal, interest and taxes by May 8, 2027.

4. **Grant Lenders' the requested** In Rem Order under U.S.C. Section 362(d)(4) for two years.

5. **Direct Attorney Rothstein** to maintain the Escrow and release the Assignments consistent with the Court's findings;

6. Grant such other and further equitable relief as the Court deems just and proper.

## VI. CONCLUSION

The evidence shows that on May 9, 2025 all the parties acted in in concert to structure a loan and escrow arrangement giving the Rabons a realistic path to saving their home. The Court, sitting in equity, has the authority to supply missing terms, formalize the escrow, and allow the Debtors to resume payments. Such relief honors the parties' intent, prevents forfeiture, and achieves a fair and just result.

Dated: February 23, 2026

<div style="margin-left:50%">

/s/ Jonathan G. Cohen
Jonathan G. Cohen
Attorney for the Debtor(s)
2 Congress Street
Hartford, CT 06114
(860) 527-8900 - Voice
(860) 527-8901 - Fax
Federal Bar No.  ct15431

CT Bar No. 410275

</div>

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: | **CASE NO.** 25-21127 **(JJT)** |
| **KATHLEEN A. RABON** | CHAPTER **7** |
| **DEBTOR.** | |
| | |
| **ELAINE MALCHMAN** | |
| **RICHARD RUSS** | |
| **RICHARD ROTHSTEIN, TRUSTEE** | |
| **MOVANTS** | |
| | |
| **VS.** | |
| | |
| **KATHLEEN A. RABON, DEBTOR** | |
| **ANTHONY S. NOVAK, TRUSTEE** | |
| **RESPONDENTS** | |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 23rd day of February, 2026, in accordance with Rules 7004(a) and 9014 F.R.Bankr.P., he served copies of the *POST TRIAL BRIEF OF THE DEBTOR SEEKING EQUITABLE RELIEF*, via Electronic Filing, First-Class Mail, postage prepaid, and email, upon the following:

**U.S. Trustee**
Steven E. Mackey, Esq.                    (served via ECF Notification)
Office of the U.S. Trustee
Giaimo Federal Building
150 Court Street, Ste. 302
New Haven, CT 06510

**Trustee**
Anthony S. Novak, Esquire                    (served via ECF Notification)
Novak Law Office, P.C.
280 Adams Street
Manchester, CT 06042-1975

**Movant's Attorney**
Ronald I. Chorches, Esquire      (served via ECF Notification)
Law Offices of Ronald I. Chorches, LLC
82 Wolcott Hill Road, Suite 203
Wethersfield, CT 06109
email: ronchorcheslaw@sbcglobal.net

**Interested Party**
Edwin C. St. Germain
PO Box 10
Scotland, CT 06264
Email: assetfund@hotmail.com

**Debtor**
Kathleen A. Rabon
34 Krug Road
Preston, CT 06365

Mark E. Rabon, Conservator
34 Krug Road
Preston, CT 06365
email: mrabon8@gmail.com

Dated:  February 23, 2026

/s/ Jonathan G. Cohen
Jonathan G. Cohen
Attorney for Debtor
2 Congress Street
Hartford CT 06114
Phone: 860-527-8900
Fed Bar #CT15431